IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| Sharon Brunson, Annie Crandle, and Patricia Patterson, | ) ) |
| | ) C/A No. 0:11-1794-MBS |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| | ) **ORDER AND OPINION** |
| The School District of Fairfield County, and Patrice Robinson, in her official capacity, | ) ) ) |
| | ) |
| Defendants. | ) ) |

On June 9, 2011, Plaintiffs Sharon Brunson,[1] Annie Crandle, and Patricia Patterson brought this action against their former employer, Defendant The School District of Fairfield County ("District"), and the Superintendent for the District, Defendant Patrice Robinson, in the Court of Common Pleas for Fairfield County, South Carolina. Plaintiffs, who were employed pursuant to one-year contracts, allege that their contracts were not renewed and that they were terminated for exercising their First Amendment rights to free speech and freedom of association (First Cause of Action). Plaintiffs further allege that they were discharged in violation of the public policy of South Carolina (Second Cause of Action); that they were wrongfully terminated in breach of Defendant District's contractual obligations (Third Cause of Action); that the violation of their rights arise under 42 U.S.C. § 1983 (Fourth Cause of Action); that Defendants interfered with Plaintiffs' contractual employment relations (Fifth Cause of Action); that Defendants gave false and defamatory information regarding Plaintiffs (Sixth Cause of Action); and that Defendants engaged in civil

---

[1] Plaintiff Brunson no longer is a party to this litigation.

conspiracy for the purpose of effecting Plaintiffs' termination from employment (Seventh Cause of Action). Defendants removed the action to this court on July 25, 2011, on the basis of federal question jurisdiction. See 28 U.S.C. §§ 1331, 1343, 1441, and 1367.

This matter is before the court on Defendants' motion for summary judgment, which motion was filed on July 30, 2012. Plaintiffs filed a response in opposition to Defendants' motion on October 3, 2012, to which Defendants filed a reply on October 15, 2012. The court held a hearing on November 8, 2012.

## I.  FACTS

The facts are taken from Plaintiffs' complaint. In 2007, Samantha Ingram, Ph.D. was hired as Superintendent for the District. She was tasked with improving the District's poor educational status and financial problems. Compl. ¶ 5 (ECF No. 1-1). Ingram hired a team of management administrators, including Plaintiffs, to help her in redirecting the District.[2] Id. ¶ 6. As part of their employment, Plaintiffs provided information and reports to the School Board regarding policies and procedures being implemented by Ingram. Id. ¶ 7. Plaintiffs also assisted in making procedural modifications under the direction of Ingram. Id. ¶ 8. According to Plaintiffs, they performed so well that the District won an award for its efforts and the economic condition of the District improved dramatically. Id. ¶ 9.

Eventually, however, the School Board became hostile to Ingram and decided to replace her. Id. ¶ 10. Plaintiffs allege that the School Board took steps to isolate Ingram from her management

---

[2] According to Defendants, Plaintiff Brunson was employed as an accounting manager who reported to the Assistant Superintendent for Finance and Operations. Plaintiff Crandle was employed as Assistant Superintendent for School Improvement. Plaintiff Patterson was employed as Secondary Instructional Leader.

team, including Plaintiffs, and subsequently refused to approve Plaintiffs' recommendations. According to Plaintiffs, the School Board retaliated against Plaintiffs and conspired to terminate them because they were politically associated with Ingram. Id. ¶ 11-13. On March 30, 2009, Ingram recommended Plaintiffs be rehired for school year 2009-2010, but the School Board declined to renew their administrative contracts.[3] Plaintiffs allege that this was because of their association with Ingram. Id. ¶ 16-17.

## II. DISCUSSION

As an initial matter, Defendants filed their summary judgment motion as to all claims. Plaintiffs did not respond to Defendants' arguments regarding interference with contractual and employment relations (Fifth Cause of Action), defamation (Sixth Cause of Action), or civil conspiracy (Seventh Cause of Action). Counsel affirmed at the hearing that Plaintiffs had abandoned these claims. Accordingly, the court turns to the remaining causes of action.

A.   First Amendment Claim (First and Fourth Causes of Action)

Although Plaintiffs allege violation of their right to free speech, they have identified no speech that was suppressed by Defendants. Rather, the gravamen of the complaint is that they were terminated for political reasons and because of their association with Ingram.

A public employee may not, consistent with the First and Fourteenth Amendments, be terminated for her political affiliation or lack thereof. Smith v. Frye, 488 F.3d 263, 268 (4th Cir. 2007) (citing Elrod v. Burns, 427 U.S. 347, 358-59 (1976)). "[T]he First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being

---

[3] Defendants represent that Plaintiffs Crandle and Patterson were offered teaching contracts pursuant to the South Carolina Teacher Employment and Dismissal Act, S.C. Code Ann. § 59-24-15.

3

supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." Id. (quoting Rutan v. Republican Party of Ill., 497 U.S. 62, 64-65 (1990)). These cases concern the political practice of patronage, or conditioning public employment on party membership or support. Patronage violates the First Amendment because of the "restraint it places on freedoms of belief and association." Id. (quoting Elrod, 427 U.S. at 355). Because patronage forces employees to choose either to affiliate with a particular party or risk losing their jobs, it compels speech and belief. Id. (citing Elrod, 427 U.S. at 356-57). However, patronage dismissals of individuals in policymaking positions are constitutional "to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." Id. (quoting Elrod, 427 U.S. at 367). Elrod has come to stand for the proposition that under the First Amendment, "a nonpolicymaking, nonconfidential government employee" cannot be "discharged or threatened with discharge from a job that he is satisfactorily performing on the sole ground of his political beliefs." Fields v. Prater, 566 F.3d 381, 385 (4th Cir. 2009).

In Branti v. Finkel, 445 U.S. 507, 518 (1980), the Court held that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." The rule of Elrod and Brandi was extended in Rutan v. Republican Party of Ill., 497 U.S. 62, 79 (1990), to encompass "promotion, transfer, recall, and hiring decisions based on party affiliation and support[.]" Where there is no significant question about the essential nature of an employee's position, the court should determine the ultimate issue of whether the position is protected from patronage dismissal. Jones v. Dodson, 727 F.2d

4

1329, 1336 n.9 (4th Cir. 1984), overruled in part on other grounds, Jenkins v. Medford, 199 F.3d 115 (4th Cir. 1997).

In the Fourth Circuit, a court must first "examin[e] whether the position at issue, no matter how policy-influencing or confidential it may be, relates to partisan political interests . . . or concerns." Nader v. Blair, 549 F.3d 953, 960 (4th Cir. 2008) (citing Stott v. Haworth, 916 F.2d 134, 141 (4th Cir. 1990)). In particular, the court must consider whether the position "involve[s] government decisionmaking on issues where there is room for political disagreement on goals or their implementation [.]" Id. (quoting Stott, 916 F.2d at 141-42). If the position satisfies the first part of the analysis, the court next must "examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." Id. (quoting Stott, 916 F.2d at 142). In judging whether the particular responsibilities of a position meet this test, "courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." Id. (quoting Stott, 916 F.2d at 142). Even "if an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that make his political affiliation an appropriate requirement for effective performance." Id. (quoting Stott, 916 F.2d at 142).

In determining whether a particular position is that of a policymaker, "[a]n employee with responsibilities that are not well defined or are of broad scope" is more likely to be a policymaker, and "consideration should also be given to whether the employee acts as an advisor or formulates plans for the implementation of broad goals." Id. (quoting Elrod, 427 U.S. at 368). Other relevant

5

factors in distinguishing a policymaker from a nonpolicymaker include: "relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials and responsiveness to partisan politics and political leaders." Id. at 960-61 (quoting Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 242 (1st Cir. 1986)).

Defendants contend that the positions at issue satisfy the two-prong Stott test. As to the first prong, Defendants assert that each Plaintiff's position involved decisionmaking on issues where there is room for political disagreement on goals or their implementation. Defendants note that education is a partisan issue, and observe that there existed a substantial disagreement among members of the School Board and administration regarding the efficacy and cost of certain District-wide tests implemented by Ingram.

As to the second prong, Defendants argue that each Plaintiff held responsibilities of policymaker. Regarding Plaintiff Crandle, Defendants assert that she was on a leadership team, reported directly to Ingram, and was required to attend all School Board meetings. In addition, her position involved acting as an advisor or formulating plans for the implementation of broad goals. She supervised principals to ensure that they had the resources they required. She made school visits with a team from the District level to verify that the curriculum was being adhered to. She also identified and addressed the need for professional development and other such duties.

Regarding Plaintiff Patterson, Defendants observe that she attended all School Board meetings; monitored compliance with School Board policies and Department of Education requirements by middle, high, and career center schools; monitored and approved budgets and expenditures; made presentations to the School Board; worked with community organizations,

participated in the selection of instructional materials, and coordinated professional development. Plaintiff Paterson also was involved in the hiring of personnel and served on state-wide educational committees.

The court agrees with Defendants that political affiliation is an appropriate requirement for the effective performance of the public offices involved. Defendants' motion for summary judgment is granted as to this issue.

B.     Public Policy Discharge Claim (Second Cause of Action)

The public policy exception to at-will employment was recognized by the South Carolina Supreme Court in Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985). In Ludwick, the supreme court held that a cause of action in tort for wrongful discharge arises when a retaliatory discharge of an at-will employee constitutes a violation of a clear mandate of public policy. Id. at 216. In South Carolina, the public policy exception has been applied "in cases where an employer requires an employee to violate the law, and to situations where the reason for the employee's termination was itself a violation of the criminal law." Nolte v. Gibbs Int'l, Inc., 515 S.E.2d 101, 103 (S.C. Ct. App. 1998) (citing Garner v. Morrison Knudsen Corp., 456 S.E.2d 907, 909 (S.C. 1995)).

The court will assume for purposes of summary judgment that the public policy exception to at-will employment is applicable in this case where Plaintiffs were employed pursuant to a contract for a definite term. See Stiles v. Am. Gen. Life Ins. Co., 516 S.E.2d 449 (S.C. 1999) (extending Ludwig to employment contracts that do not provide for a specific termination date, but rather contain a notice provision); but see Cunningham v. Anderson County, 2013 WL 163836 (S.C. Ct. App. 2013) (finding that employee who never claimed to be at-will employee may not obtain

relief based on the law governing at-will employment) (opinion not released for publication in permanent law reports, and thus subject to revision or withdrawal).

Plaintiffs do not allege that they were asked to violate a law or that the decision not to renew their administrative contracts violated a criminal law. Moreover, there is no action for wrongful discharge in violation of public policy when the employee has an existing remedy for a discharge that allegedly violates rights other than the right to the employment itself. See Epps v. Clarendon County, 405 S.E.2d 386, 387 (S.C. 1991). In this case, Plaintiffs have asserted their rights under 42 U.S.C. § 1983. Defendants' motion for summary judgment is granted as to this issue.

C.     Wrongful Termination Claim (Third Cause of Action)

Plaintiffs contend that their "pretextual termination was based upon breach of contract, affiliation and association with the prior Superintendent Ingram and their right to freedom of speech; all of which constitutes wrongful discharge and violates the Defendants' duty to act in good faith. Although it is not clear, the court construes Plaintiffs' claim as alleging Defendants breached their implied covenant of good faith and fair dealing with respect to the employment contracts.

> Although implied covenants are not favored in the law, . . . there exists in every contract an implied covenant of good faith and fair dealing. Breach of this covenant has been recognized as a cause of action in the employment context in South Carolina. Specifically, [South Carolina courts] have stated, "[W]e find no authoritative case law holding the implied covenant of good faith and fair dealing is not applicable to employment contracts that alter the employee's at-will status."

Williams v. Riedman, 529 S.E.2d 28 (S.C. Ct. App. 2000) (internal citations omitted). Thus, "'[i]n the absence of an express provision therefor, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made.'" Commercial Credit Corp. v. Nelson

Motors, Inc., 147 S.E.2d 481, 484 (S.C. 1966) (quoting 17A C.J.S. Contracts § 328).

In this case, Plaintiffs' one-year administrative contracts were honored. At the conclusion of the contractual period, Plaintiffs were offered teaching contracts. Plaintiffs have provided no authority, and the court is aware of no basis under the law, entitling Plaintiffs to renewal of their administrative contracts. Further, Defendants lawfully considered Plaintiffs political affiliations in determining whether Plaintiffs could effectively perform in the positions for which Ingram hired them. The court discerns no basis to conclude that Defendants acted in bad faith.

### III. CONCLUSION

For the reasons stated, Defendants' motion for summary judgment (ECF No. 28) is **granted** as to the First, Second, Third, and Fourth Causes of Action. The remaining causes of action have been withdrawn by Plaintiffs.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

January 31, 2013.